UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| DAVID BANE | ) | |
|       Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:08-cv-0310-RLY-DML |
| RONALD CHAPPELL, THE CITY OF | ) | |
| RICHMOND HUMAN RIGHTS | ) | |
| COMMISSION, THE CITY OF | ) | |
| RICHMOND, INDIANA, REX A. | ) | |
| JOHNSON and JASON HAUN, | ) | |
|       Defendants. | ) | |

**ENTRY ON THE CITY DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, PLAINTIFF'S REQUEST FOR ORAL ARGUMENT AND
EVIDENTIARY HEARING, and DEFENDANTS' MOTION TO STRIKE**

Plaintiff, David Bane ("Plaintiff"), and his former company, Bane Personnel

Management Services, Inc. ("BPMS"), provided personnel placement services in

Richmond, Indiana.  Rex Johnson ("Johnson") and Jason Haun ("Haun") are former

employees of the Plaintiff.  In December 2004 and January 2005, Haun and Johnson

reported to the City of Richmond Human Rights Commission ("HRC") that Plaintiff

engaged in discriminatory practices.  A lengthy investigation ensued, which, according to

Plaintiff, resulted in the loss of his reputation and business.

On March 10, 2008, Plaintiff commenced this action against Ronald Chappell

("Chappell"), the director of the HRC at that time, the HRC, and the City of Richmond,

Indiana (collectively "City Defendants").  Plaintiff alleges that City Defendants violated

1

his rights to procedural and substantive due process (Count I) under 42 U.S.C. § 1983

("Section 1983") and his right to equal protection (Count II).  Plaintiff also brings state

law claims against Chappell, Johnson, and Haun for defamation (Count III) and tortious

interference with business relationships and contracts (Count IV), and a civil conspiracy

claim against all named Defendants (Count V).

On June 6, 2009, City Defendants filed a motion for summary judgment on all

claims set forth in Plaintiff's Complaint.  On August 18, 2009, Plaintiff filed a request for

oral argument and evidentiary hearing on the motion for summary judgment.

Additionally, on October 1, 2009, City Defendants filed a motion to strike Plaintiff's

surreply to the motion for summary judgment.  Having read and reviewed the supporting

and opposing briefs and the applicable law, the court hereby **GRANTS** City Defendants'

motion for summary judgment, **DENIES** Plaintiff's request for oral argument and

evidentiary hearing, and **GRANTS** City Defendants' motion to strike.

## I.       Request for Oral Argument and Evidentiary Hearing

Plaintiff requests that the court hold oral argument on City Defendants' motion for

summary judgment, and an evidentiary hearing regarding the sufficiency of process

afforded to Plaintiff in his case before the HRC.  The court finds that oral argument is not

necessary because this case does not present complex legal issues that typically require

oral argument.  The court further finds that an evidentiary hearing on the sufficiency of

process due to Plaintiff is, likewise, not necessary because, as explained below,  Plaintiff

was not deprived of a property or liberty interest.  Therefore, the court **DENIES**

Plaintiff's request for oral argument and evidentiary hearing.

## II.    Motion to Strike

City Defendants move to strike Plaintiff's surreply, filed September 30, 2009, on the basis that it does not conform to the requirements of Local Rule 56.1(d).  The rule states: "[i]f, in reply, the moving party relies upon evidence not previously cited or objects to the admissibility of the non-moving party's evidence, the non-moving party may file a surreply brief limited to such new evidence and objections. . . ."  L.R. 56.1(d).  Plaintiff's surreply merely reiterates arguments made in previous briefs, and fails to address any new evidence or objections.  Because Plaintiff's surreply does not satisfy L.R. 56.1(d), the court **GRANTS** City Defendants' motion to strike Plaintiff's surreply.

## III.   Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 248.  In deciding whether genuine issues of material fact exist, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the

non-moving party.  *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003).

The burden is upon the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the non-moving party may not rest upon the pleadings but "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Becker v. Tenenbaun-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

## IV.   Factual Background[1]

### A.   The Parties

1.   Plaintiff founded a personnel placement business in 1989, called Bane and Associates, which was incorporated in Indiana in 1994 as Bane Speciality Services, Inc.[2]  BPMS was incorporated by Bane in Indiana in 1997, in order to provide temporary personnel placement exclusively in Richmond, Indiana. (Plaintiff's Complaint ("Complaint") ¶ 10; Deposition of David Bane ("Bane

---

[1]City Defendants correctly point out that Bane violated Local Rule 56.1 for failing to file a section entitled "Statement of Material Facts in Dispute," and ask the court to deem City Defendants' facts admitted without controversy for the purposes of this motion.  The court notes that Bane's response includes a lengthy section entitled "Statement of Material Facts."  The court therefore finds that City Defendants have not been prejudiced by Bane's failure to strictly comply with the local rule, and thus, declines their invitation to strike Bane's facts.  Before Bane's counsel submits any future filings, the court strongly encourages Bane's counsel to review the local rules.

[2]Although incorporated as Bane Speciality Services, Inc., it was doing business as Bane and Associates.  (Bane Dep. at 17).

4

Dep.") at 17, 26-27; City Defendants' Memorandum in Support of Summary

Judgment ("Defendants' Support Brief") at 6).

2.    Haun and Johnson are both former employees of BPMS.  (Deposition of Rex

Johnson ("Johnson Dep.") at 22-23, 43-44; Bane Dep. at 34-35, 107; Declaration

of Ronald Church ("Church Dec."), Exhibit B, 12/22/04 Charge of

Discrimination).

3.    The HRC is governed by the City and City Council of Richmond, Indiana.  The

HRC commenced an investigation, and issued a final investigative report,

concerning the discrimination charges filed against Plaintiff.  (Deposition of Sally

Hutton ("Hutton Dep.") at 5-6; Church Dec., Exhibit B, 12/22/04 Charge of

Discrimination; Church Dec., Exhibit E, 6/5/06 Final Investigative Report).

4.    Chappell was the director of the HRC at the time Haun filed his complaint, and for

the entire duration of the HRC investigation of the Plaintiff.  (Affidavit of Ronald

Chappell ("Chappell Aff.") ¶ 3; Deposition of Ronald Chappell ("Chappell Dep.")

at 57, 62).


**B.    Rex Johnson**

5.    Johnson worked as a consultant for Plaintiff in 1991, and again from 1993 to 1995.

In 1997, Johnson worked as a sales and marketing manager for Plaintiff, until his

termination in 2005.  (Church Dec., Exhibit J, 2/1/08 Affidavit of Rex Johnson;

Johnson Dep. at 22-23; Bane Dep. at 34-35).

6.      In 1997, when Plaintiff hired Johnson as a sales and marketing manager, Johnson

executed an employment agreement that contained a non-compete clause.

(Affidavit of David Bane ("Bane Aff.") ¶ 12).

7.      Beginning in 2003, Johnson was essentially in charge of the Richmond, Indiana

office, taking over the duties of hiring, terminating and supervising temporary

employees.  (Bane Dep. at 43-44; Bane Aff. ¶ 15).

8.      On February 23, 2005, Johnson called Plaintiff and threatened to make it "bad" on

Plaintiff if Johnson did not receive pay in advance for an upcoming vacation.

(Bane Aff. ¶ 16).

9.      On February 25, 2005, Plaintiff received letters from Primex Plastics Corporation

and Woodruff HE Corporation (Plaintiff's largest Richmond clients), stating that

both had decided to "go with Rex [Johnson]."  Upon receipt of these two letters,

Plaintiff learned that Johnson had no intention of returning to work at BPMS, and

thus, considered Johnson terminated as of February 25, 2005.  (*Id.*; Bane Dep. at

35).

10.     After Johnson's termination, Plaintiff learned that Johnson had been planning to

leave in order to form his own personnel placement company, and that Johnson

was secretly negotiating with BPMS' clients, in an attempt to take over their

contracts.  (Bane Aff. ¶ 17; Bane Dep. at 35).

11.     Plaintiff also later learned that Johnson entered into a franchise ownership

agreement with Rush Temporary Services, one of Plaintiff's competitors, on

February 17, 2005.  Johnson owned and operated the Rush franchise until
December 2007.  (Johnson Dep. at 23; Bane Aff. ¶ 18; Bane Dep. at 35).

12.     Upon learning of Johnson's activities, Plaintiff retrieved the employment
        agreement executed between Johnson and Plaintiff.  Upon examination of the
        agreement, Plaintiff discovered the signature page was absent.  (Bane Aff. ¶ 19).

13.     Plaintiff conducted an investigation to find the missing signature page from the
        employment agreements, and learned that the page was taken from Plaintiff's
        home by Haun, at the request of Johnson.  (*Id*.; Affidavit of Jeffrey May ("May
        Aff.") ¶¶ 4-5; Wayne Superior Court Decision of March 16, 2009 ("Decision") at
        1).

14.     In March 2005, Plaintiff filed suit against Johnson in Wayne Superior Court in
        order to restrain Johnson from further violations of the terms of the covenant not to
        compete.  The court found in favor of Plaintiff in the amount of $67,118.80 plus
        court costs.  (Plaintiff's Memorandum in Opposition to Summary Judgment
        ("Plaintiff's Opposition Brief") at 6; Decision at 1-3).

        **C.     Jason Haun**

15.     Haun was an employee of BPMS at certain times between 1999 and 2003.  (Bane
        Aff. ¶ 21; Bane Dep. at 103; Johnson Dep. at 43).

16.     One night in July 2004, when Haun was no longer Plaintiff's employee, Plaintiff
        gave Haun permission to stay in his home while Plaintiff was away for the night.
        That evening, Haun stole several items of Plaintiff's personal property and spent

$1,200 on Plaintiff's credit card.  (Bane Aff. ¶ 21; Bane Dep. at 102-103; Johnson Dep. at 43).

17. Thereafter, Plaintiff filed theft charges against Haun.  (Bane Aff. ¶ 21).

18. When Haun bonded out of jail, he telephoned Plaintiff and threatened "it's on," indicating that Haun planned to take retaliatory measures against Plaintiff.  (*Id*; Bane Dep. at 106).

### D.    HRC Complaint and Investigation

19. On December 17, 2004, Haun filed a complaint with the HRC, alleging Plaintiff engaged in racially discriminatory hiring practices.  (Church Dec., Exhibit B, 12/24/04 Charge of Discrimination; Bane Dep. at 107).

20. Attached to Haun's complaint was a letter (the "Letter"), allegedly authored by Plaintiff, stating in relevant part that "each Wednesday [is] 'No Nig' day . . . under no circumstance shall any moon cricket or half breed be interviewed or placed at any client company on that day."  (Church Dec., Exhibit B, 12/24/04 Charge of Discrimination; Church Dec., Exhibit C, "No Nig" Days Letter).

21. Although Chappell admittedly had doubts about the authenticity of the Letter, it was still used as evidence against Plaintiff during the HRC investigation. (Chappell Aff. ¶ 10; Chappell Dep. 57-60).

22. Plaintiff denies that he authored the Letter attached to the HRC complaint, insisting that it was well known throughout BPMS that the Letter was written by Johnson, in an attempt to discredit Plaintiff.  (Bane Dep. at 47-48; May Aff. ¶ 6).

### 1.     HRC Procedures for Complaints

23.     The HRC is governed under Richmond City Ordinance § 32.50.  (Church Dec.,

Exhibit A, Richmond City Ordinance § 32.50; Chappell Aff. ¶ 3; Chappell Dep. at

32; Church Dec. ¶ 3; Hutton Dep. at 6).

24.     The HRC director reviews all complaints after they are evaluated by an

administrative assistant.  If a complaint is accepted, an investigator is assigned to

lead the investigation.  (Chappell Aff. ¶¶ 4-6; Chappell Dep. at 32-33; Church Dec.

¶ 5).

25.     The ordinance allows a complaint to be filed by an aggrieved party, or by the

director of the HRC (a "director initiated complaint"), where the director files a

complaint on behalf of an aggrieved person or class of persons.  (Church Dec. ¶ 5;

Chappell Aff. ¶ 6).

26.     The HRC investigator assigned to a particular case conducts interviews, gathers

documentary evidence, and prepares a final investigative report, which contains a

summary of evidence and a recommendation about whether the HRC should find

probable cause to support the allegations in a complaint.  (Chappell Aff. ¶¶ 5-7;

Church Dec. ¶ 6).

27.     The director of the HRC presents the final investigative report to the commission,

and then the entire commission votes on whether to find probable cause.

(Chappell Aff. ¶ 7; Church Dec. ¶ 7).

28.     As a threshold inquiry, the Richmond Code governing the HRC requires that

complaints be filed within one hundred eighty days in order to be actionable.  *See*
RICHMOND, IND., CODE § 32.50(b)(14) ("no complaint shall be valid unless filed
within one hundred eighty (180) days from the date of the occurrence of the
alleged discriminatory practice. . . .") (Chappell Aff. ¶ 9; Chappell Dep. at 40-41).

### 2.    HRC Investigation of Plaintiff

29.    After Haun's complaint was accepted by an administrative assistant and reviewed
by Chappell, it was assigned to HRC investigator, Ronald Church ("Church").
(Chappell Aff. ¶ 11; Church Dec. at 8).

30.    At the time Haun filed his complaint with the HRC, Chappell was aware of the
criminal charges against Haun for stealing money from Plaintiff.  In fact, Haun
admitted to Chappell that he actually stole from Plaintiff.  (Chappell Aff. ¶ 10;
Chappell Dep. at 59).

31.    On January 18, 2005, Plaintiff filed a response to Haun's complaint, arguing that
Haun failed to raise any events that allegedly occurred within one hundred eighty
days of December 17, 2004, highlighting the fact that Haun had not worked for
Plaintiff since 2003.  (Bane Dep. at 107; Chappell Aff. ¶ 9; Church Dec. ¶ 8).

32.    Chappell and Church determined that Haun's complaint described a continuing
practice of discriminatory hiring, and, therefore, deemed the complaint timely
filed.  (Chappell Aff. ¶ 9; Church Dec. ¶ 8).

33.    Johnson first learned that Haun filed a complaint with the HRC in December 2004.
In January 2005, Johnson went to the HRC, while still employed by Plaintiff, and

met with Chappell to discuss the investigation of Plaintiff.  (Johnson Dep. at 42, 50, 107; Chappell Aff. ¶ 18).

34.   Johnson knew Church prior to the investigation of Plaintiff.  (Johnson Dep. at 107).

35.   In January 2005, the HRC placed two advertisements in the local newspaper, the Richmond *Palladium-Item*, requesting individuals who applied with Plaintiff in the past, but never received a job placement, to contact the HRC.  (Chappell Aff., Exhibit C, January 2005 *Palladium-Item* Ads; Chappell Aff. ¶ 14; Deposition of Ronald Church ("Church Dep.") at 38).

36.   Church's investigation included interviews of former and current employees of Plaintiff, in which some witnesses denied that Plaintiff engaged in any racial discrimination, and others allegedly confirmed some or all of the allegations contained in Haun's complaint.  (Church Dec. ¶ 9).

37.   On October 31, 2005, Johnson met with Church to provide information about Plaintiff, and handwrote an affidavit in Church's office that was notarized by an HRC administrative assistant.  This particular meeting between Church and Johnson occurred during the time that Plaintiff was suing Johnson for breach of the non-compete clause, and Johnson informed Church of the pending lawsuit. (Johnson Dep. at 107-08; Church Dec. ¶ 17; Church Dec., Exhibit I, Johnson 10/31/05 Affidavit; Church Dep. at 53-55; Chappell Aff. ¶ 18).

38.   Throughout the course of the investigation, no African American who was placed

11

in a job by Plaintiff complained or came forward with allegations of racial

discrimination.  In addition, no African American came forward with an allegation

that they were not hired on a Wednesday.  (Church Dep. at 35-37, 40).

39.    The interviews conducted by Church also surfaced the allegation that Plaintiff

racially profiled applicants by attaching photo IDs to the applications, and by

shading in the "B" of the "Bane and Associates" on the applications themselves for

African American applicants.  Therefore, Church subpoenaed applications of

BPMS from 2000 to 2003, in which he found only one such marked application.

(Church Dec. ¶¶ 9-10; Chappell Aff. ¶ 12).

40.    Church alleges that Jessica Marshall, a former secretary of BPMS, admitted to

shredding documents and applications, and also informed Church that some

applications were stored in a garage on the premises of BPMS.  Based on this

information, in March 2006, Church went to BPMS and found a bag of

applications in the garage, several of which had the "B" marked.  (Church Dec. ¶

10; Chappell Aff. ¶ 12).

41.    However, Church found no application submitted to Plaintiff between June 17,

2004 and December 17, 2004 (the 180 day time frame prior to Haun's complaint)

that had the "B" marking, or that contained any derogatory racial slurs.  (Church

Dep. at 66).

42.    On March 16, 2006, the HRC investigation allegedly surfaced evidence of sex

discrimination, causing Chappell to convert Haun's complaint into a director-

initiated action.[3]  (Chappell Aff. ¶ 12; Church Dec. ¶ 12; Church Dec., Exhibit D, 3/16/06 and 4/7/06 Letters to Bane's Attorney).

43.    After completing a substantial part of the investigation, Church prepared the final investigative report, concluding with a recommendation that the commission find probable cause.  Chappell concurred in Church's recommendation, and also signed the report before presenting it to the commission for a vote.  (Church Dec. ¶ 13; Chappell Aff. ¶ 13).

44.    On June 8, 2006, the final investigative report prepared by Church was presented to the commissioners of the HRC, who voted in favor of finding probable cause. The final investigative report concluded that Plaintiff: (1)"use[d] a type of application 'coding' or 'profiling,'" (2) "facilitated practices and procedures [of] discrimination and intimidation," and (3) "engage[d] in the destruction of subpoenaed documents."  (Church Dec., Exhibit E, 6/5/06 Final Investigative Report; Church Dec. ¶ 13; Chappell Aff. ¶ 13).

### 3.    HRC Actions After the Finding of Probable Cause

45.    The investigation of Plaintiff continued after the finding of probable cause by the HRC.  (Church Dec. ¶ 14; Chappell Aff. ¶ 14).

46.    In October 2006, Church attempted to contact more witnesses by running an

---

[3]The evidence of alleged sex discrimination was the discovery that female applicants of BPMS were only placed at Woodruff HE Corporation, a lower-paying subsidiary of Primex Plastics (a primary employer-client of Plaintiff).

13

advertisement on a local public access channel in Richmond.  The advertisement requested that those who had previously applied for employment placement with BPMS contact the HRC.  The television ad was eventually pulled at the request of the HRC after Plaintiff's attorneys threatened legal action.  (Church Dec., Exhibit G, WCTV Ad; Church Dec. ¶ 15; Chappell Aff. ¶ 14).

47.   During the course of the HRC investigation, Chappell learned that Plaintiff operated three temporary employment agencies in Ohio.  On June 6, 2006, Chappell sent materials, which included the HRC final investigative report as well as exhibits referred to in the report, to Michael Payton, the director of the Ohio Civil Rights Commission.  (Chappell Aff., Exhibit D, 6/9/06 Letter to Michael Payton; Chappell Aff. ¶ 15; Bane Dep. at 145).

48.   After the finding of probable cause by the HRC against Plaintiff, there was increased media coverage of the HRC proceedings involving Plaintiff.  Chappell and Church responded to requests for information and comments from the local Richmond newspaper, the *Palladium-Item*, and were quoted in various articles about the case on June 22, 2006, and July 6, 2006.  (Chappell Aff., Exhibit E, *Palladium-Item* Articles (Chappell Quoted); Chappell Aff. ¶ 17; Church Dec., Exhibit H, *Palladium-Item* Articles; Church Dec. ¶ 16).

49.   On June 21, 2006, Chappell participated in an interview with WHIO, a local channel in Dayton, Ohio, to discuss the HRC investigation of Plaintiff, where Chappell provided facts concerning the findings contained in the investigative

14

report.[4]  Plaintiff alleges that his Ohio clients saw the interview of Chappell and

discussed the interview with Plaintiff.  (Chappell Aff. ¶ 16; Bane Dep. at 145-148).

**E.     The Ohio Action**

50.     On August 23, 2006, in light of the public statements made by individuals

involved in the HRC investigation, Plaintiff filed suit in Ohio against the City of

Richmond, Chappell, Church, Johnson, Haun, and John and Jane Does (1-100) for

defamation in the Montgomery Court of Common Pleas.  ("Ohio Action," Docket

# 47-21).

51.     The City Defendants removed the suit to federal court, and filed a motion to

dismiss for lack of personal jurisdiction.  (Motion to Dismiss-Ohio, Docket # 47-

22).

52.     Plaintiff moved for voluntary dismissal, and the court granted Plaintiff's motion on

June 11, 2007.  (Decision and Entry Re: Motion for Voluntary Dismissal, Docket #

47-23; Defendants' Support Brief at 12).

**F.     Events in 2008 and the HRC Administrative Hearing**

53.     In February 2008, Chappell was terminated by the HRC board as the director of

the HRC due to internal problems existing between Chappell and other department

heads.  (Hutton Dep. at 9).

---

[4]Chappell claims that at the time he participated in the interview with WHIO, Plaintiff
had rejected conciliation and had requested that a hearing be set, and, therefore, he acted
consistently with the HRC policy of not making evidence public until a matter is slated for a
hearing.  (Chappell Aff. ¶ 16).

54.     On February 1, 2008, at the direction of Church, Johnson signed a second

        affidavit, which was typed and notarized by the same HRC administrative

        assistant.  The second affidavit was allegedly written in order to clarify mistakes

        and misstatements made by Johnson in his original affidavit.[5]  (Johnson Dep. at

        113-18; Church Dec., Exhibit J, Johnson 2/1/08 Affidavit; Church Dec. ¶ 19).

55.     On February 19, 2008, the HRC began an administrative hearing regarding

        Chappell's complaint of discrimination against Plaintiff.  (Church Dec. ¶ 21; Bane

        Dep. at 161-64).

56.     The HRC administrative hearing lasted two weeks, and concluded in March 2008.

        During the hearing, Plaintiff's attorney presented witnesses and was given an

        opportunity to cross-examine witnesses called by the HRC.  Plaintiff also testified

        during the hearing.  (Bane Dep. at 164; Church Dec. ¶ 21; Church Dec., Exhibit K,

        Index of Administrative Hearing Transcript).

57.     On September 20, 2008, the hearing officer issued Findings of Fact, Conclusions

        of Law, and Recommendation to the HRC.  The hearing officer found in favor of

        Chappell, concluding that Plaintiff, in his operation of BPMS, engaged in racially

        discriminatory hiring practices.  On October 2, 2008, the HRC adopted the hearing

        officer's findings.  (Church Dec. ¶ 23; Church Dec., Exhibit L, 9/20/08 Hearing

---

[5]Specifically, Johnson's original affidavit stated that the alleged policy of blacking out
the "B" on applications lasted from 1998 through 2001 or 2002.  Johnson's second affidavit
alleges that the policy continued until 2005.  (Johnson Dep. at 114-15); (Church Dec., Exhibit I,
Johnson 10/31/05 Affidavit); (Church Dec., Exhibit J, Johnson 2/1/08 Affidavit).

16

Officer's Findings; Church Dec., Exhibit M, 10/2/08 HRC Meeting Minutes).

58.    The findings of the hearing officer also included an order to reconvene the hearing

in order to ascertain damages against Plaintiff.  However, no such hearing has yet

occurred.  (Church Dec. ¶ 23; Church Dec., Exhibit L, 9/20/08 Hearing Officer's

Findings).

## V.    Discussion

City Defendants move for summary judgment on Plaintiff's federal and state law

claims.  Plaintiff's Section 1983 due process and equal protection claims are only against

City Defendants.  Plaintiff's state law claims for defamation and tortious interference

with business relationships and contracts are against Chappell, Johnson, and Haun.

Finally, Plaintiff's state law claim for civil conspiracy is against all Defendants.  The

court will first address Plaintiff's Section 1983 claims against City Defendants.  However,

before reaching the merits of these claims, the court begins its discussion with City

Defendants' statute of limitations argument.

### A.    Statute of Limitations

Claims brought pursuant to 42 U.S.C. § 1983 "are subject to the statute of

limitations for personal injury actions in the state in which the alleged injury occurred."

*Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th

Cir. 2005).  This is because a Section 1983 claim is characterized as an "action for injury

to personal rights."  *Wilson v. Garcia*, 471 U.S. 261, 265 (1985) (quoting *Garcia v.

Wilson*, 731 F.2d 640, 651 (10th Cir. 1984).  In Indiana, the statute of limitations for

bringing personal injury actions is two years, and therefore, the statute of limitations on

Plaintiff's Section 1983 claims is also two years.  IND. CODE 34-11-2-4; *Jackson v.*

*Kotter*, 541 F.3d 688, 699 (7th Cir. 2008); *Bailey v. Faulkner*, 765 F.2d 102, 103 (7th Cir.

1985).

Plaintiff filed the present action on March 10, 2008.  City Defendants argue that all

events occurring prior to March 10, 2006, are time-barred, and, moreover, that the

invocation of Indiana's Journey's Account Statute cannot be used to save Plaintiff's

otherwise time-barred claims.  The Journey's Account Statute provides, in relevant part:

> (a)     This section applies if a plaintiff commences an action and:
>
> > (1)     the plaintiff fails in the action from any cause except
> > negligence in the prosecution of the action . . .
>
> (b)     If subsection (a) applies, a new action may be brought not later than
> the later of:
>
> > (1) three (3) years after the date of the determination under
> > subsection (a); or
> >
> > (2) the last date an action could have been commenced under the
> > statute of limitations governing the original action; and be
> > considered a continuation of the original action commenced by the
> > plaintiff.

IND. CODE § 34-11-8-1.  The Journey's Account Statute does not save a time-barred

complaint when a plaintiff voluntarily dismisses the original action.  *Al-Challah v. Barger*

*Packaging*, 820 N.E.2d 670, 675 (Ind. Ct. App. 2005) (citing *Kohlman v. Finkelstein*, 509

N.E.2d 228, 232 (Ind. Ct. App. 1987)).  Rather, the statute is meant to enable diligent

plaintiffs who may have erred procedurally, but not negligently in prosecuting the case, to

18

continue the lawsuit based on the merits. *Mercantile Nat. Bank of Hammond v. Underwood*, 906 N.E.2d 881, 887 (Ind. Ct. App. 2009).

As noted above, Plaintiff filed the Ohio Action on August 23, 2006, alleging that the City of Richmond, Indiana, Chappell, Church, Johnson, Haun, and John and Jane Does (1-100) defamed Plaintiff before and throughout 2006, up to and including the month in which he brought the action. Plaintiff subsequently voluntarily dismissed the case. Thus, under Indiana's Journey Account Statute, the events giving rise to the defamation claim asserted in the Ohio Action are time-barred. All is not lost for Plaintiff, however, as those events that are not time-barred – i.e., that occurred after March 10, 2006 – and do support a claim of defamation may support a claim for defamation in this lawsuit. Thus, in Plaintiff's present defamation claim, he may include the June 22, 2006 and July 6, 2006 articles in the *Palladium-Item*, and he may also include the June 21, 2006 WHIO TV interview with Chappell.

With respect to Plaintiff's Section 1983 procedure and due process claims against City Defendants, Plaintiff alleges that his due process and equal protection claims are not time-barred because they involve a continuing wrong. The continuing wrong doctrine is "just as applicable to Title VII and Section 1983 cases as it is to copyright violations or business torts." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002) (citing *Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001)). A continuing wrong occurs "when an entire course of conduct combines to produce an injury, the conduct may constitute a continuing wrong as to delay the running of the statute of limitations." *Frady*

19

*v. Hedgcock*, 497 N.E.2d 620, 622 (Ind. Ct. App. 1986).  A continuing wrong is not an equitable doctrine, "it is simply a legal concept used to define when an act, omission, or neglect took place."  *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind. 1991).  If conduct creates a continuing wrong, the statute of limitations does not begin to run until the wrongful act ceases.  *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind. 2000).

In the present case, the HRC's administrative hearing concluded in February 2008, but a sanctions hearing has not yet occurred.  City Defendants argue that either (1) Plaintiff's claims based on conduct occurring before March 10, 2006 are time-barred, due to the fact he filed the Ohio Action in 2006, or (2) his claim is not ripe since the HRC has not held a sanctions hearing.  City Defendants' first argument is misplaced for the reasons set forth above.  City Defendants' second argument likewise fails.  Plaintiff's injuries, such as the loss of his business, arise out of the entire course of alleged conduct instituted by City Defendants throughout the process of the HRC investigation.  Plaintiff waited until the completion of the HRC investigation and administrative hearing before filing the present suit, as required by the Richmond Code.  Therefore, the court finds that Plaintiff's Section 1983 claims are not time-barred.

## B.    Federal Claims

### 1.    Due Process

In Count I, Plaintiff alleges violations of his rights to procedural and substantive due process under Section 1983.  The Due Process Clause of the Fourteenth Amendment states: "[N]or shall any State deprive any person of life, liberty, or property, without due

process of law."  U.S. CONST. amend. XIV, § 1.  In order to set forth a violation under

Section 1983, a plaintiff must show: (1) the conduct complained of was committed by a

person acting under color of state law, (2) the conduct deprived a person of rights,

privileges, or immunities secured by the Constitution or laws of the United States, and (3)

the defendant's conduct proximately caused the plaintiff's deprivation.  *Parratt v. Taylor*,

451 U.S. 527, 535 (1981); *Webb v. City of Chester, Illinois*, 813 F.2d 824, 828 (7th Cir.

1987).

### a.  Procedural Due Process

Plaintiff alleges that he was deprived of the ability to pursue his chosen trade or

profession by City Defendants without due process of law.  To prevail on a procedural

due process claim, a plaintiff must show: (1) that the plaintiff was deprived of a protected

property or liberty interest, and (2) that the deprivation occurred without adequate due

process.  *Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 728 (7th Cir. 2006); *Halfhill v.

Northeast School Corp.*, 472 F.3d 496, 500 (7th Cir. 2006).  The threshold question under

this analysis is whether a property or liberty interest actually exists.  *Buttitta v. City of

Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993); *Minch v. City of Chicago*, 486 F.3d 294, 302

(7th Cir. 2007) ("[a]n essential component of a procedural due process claim is a

protected property or liberty interest").

### i.  Property Interest

Plaintiff claims that City Defendants "deprived [him] of a liberty and property

interest in practicing [Plaintiff's] trade in Richmond, Indiana . . . ."  (Plaintiff's Brief in

Opposition to Summary Judgment at 30).  Property interests protected under the Due Process Clause are not created by the Constitution, but are "defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  A protected property interest "is not constitutionally cognizable unless a person has a 'legitimate claim of entitlement' to the benefit." *Buttitta*, 9 F.3d at 1202.  Constitutionally protected property interests can also be created through less formal rules, or through "mutually explicit understandings." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Brown*, 462 F.3d at 728.

Here, as noted above, Plaintiff alleges that he was effectively precluded from following his chosen trade or profession due to City Defendants' HRC investigation.  Such an allegation does not implicate a protected property interest; rather, it implicates a protected liberty interest.  *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (holding that child care workers' claim that they were effectively barred from future employment in the child care field once an indicated finding of child abuse or neglect is disclosed to, and used by, licencing agencies and present or prospective employers, "squarely implicated a protected liberty interest."); *see also Bernard v. United Tp. High Sch. Dist. No. 30*, 5 F.3d 1090, 1092 (7th Cir. 1993) ("The due process clause of the Fourteenth Amendment protects one's liberty to follow a trade or occupation, as well as the property interests one may acquire in a particular job, from certain kinds of state infringement.").  Thus, to the extent Plaintiff alleges that he was deprived a property interest, his claim fails as a matter of law.  Therefore, City Defendants' motion for summary judgment on

22

this issue is **GRANTED**.

### ii.    Liberty Interest

The court now analyzes whether Plaintiff's allegation is sufficient to implicate a protected liberty interest. *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992) (quoting *Lawson v. Sheriff of Tippecanoe County*, 725 F.3d 1136, 1138 (7th Cir. 1984)) (holding that "the concept of liberty protected by the due process clause has long included occupational liberty – 'the liberty to follow a trade, profession, or other calling.'"). Plaintiff's claim arises from the alleged defamation by the City Defendants, which resulted in the Plaintiff's inability to continue the operation of his business.

Defamation, standing alone, is not enough to deprive a person of a liberty interest protected by the Fourteenth Amendment, "even when it causes serious impairment of [one's] future employment." *Brown*, 462 F.3d at 730 (quoting *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002)). Thus, when a deprivation of occupational liberty results from a claim of defamation, a plaintiff must satisfy the "stigma plus" test. *Brown*, 462 F.3d at 730 (citing *Paul v. Davis*, 424 U.S. 693 (1976)); *Hunt v. Ind. Family & Soc. Serv's Admin.*, 2007 WL 2349626, at *10 (S.D. Ind. Aug. 1, 2007). Under the "stigma plus" test, "it is only the 'alteration of legal status,' such as the governmental deprivation of a right securely held, 'which, combined with the injury resulting from the defamation, justifie[s] the invocation of procedural safeguards.'" *Id.* (quoting *Paul*, 424 U.S. at 708-09). For the purposes of this case, an "alteration of legal status" recognized under state law occurs when an employee's good name and reputation are called into question in a

23

manner which makes it impossible for the employee to find new employment in his chosen field.  *Id.* at 730-31.  In other words, it is only when a state actor "casts doubt on an individual's 'good name, reputation, honor or integrity' in such a manner that it is 'virtually impossible for the [individual] to find new employment in his chosen field,' the government has infringed upon an individual's 'liberty interest to pursue the occupation of his choice.'" *Dupuy*, 397 F.3d at 503 (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)).

Here, Plaintiff alleges that City Defendants' defamatory statements, labeling Plaintiff as a racist, affected his business in such a way that he was no longer able to continue its operation.  However, Plaintiff does not present any evidence that he was precluded from following his chosen trade or profession.  *See, e.g., Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir. 1987) (holding that no liberty interest was implicated when defamatory statements caused an individual's attractiveness to clients to be reduced).  Without a showing that Plaintiff suffered an alteration of legal status, he cannot meet the "stigma plus" test, and, therefore, his procedural due process claim fails as a matter of law.  City Defendant's motion for summary judgment on this issue is therefore **GRANTED.**

### iii.    Bias

Plaintiff alleges that the HRC's combination of investigatory and adjudicatory functions created an unconstitutional risk of bias in his adjudicatory hearing, thus, violating his right to due process.  In *Withrow v. Larkin*, 421 U.S. 35 (1975), the Supreme

Court explained:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals pose such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id*. at 47.

Here, Plaintiff has not pointed to any evidence to overcome the presumption of honesty and integrity in the HRC adjudicator who presided over his administrative hearing. Over the course of a two-week hearing, Plaintiff was provided the opportunity to present and cross-examine witnesses, submit evidence, and to testify on his own behalf. Plaintiff's mere allegation that the combination of HRC functions constituted a due process violation is insufficient. *Id*. at 58 (holding that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation . . . ."). Accordingly, City Defendants' motion for summary judgment is **GRANTED** with respect to this issue.

### b.      Substantive Due Process

Plaintiff also alleges that City Defendants violated his right to substantive due process when City Defendants publicly claimed that Plaintiff engaged in discriminatory

hiring practices.  In order to find a violation of substantive due process by a governmental entity, that entity must engage in conduct that "shocks the conscience . . . or 'interferes with rights implicit in the concept of ordered liberty.'" *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).  Generally, governmental action will "shock the conscience" when it is so brutal and offensive that it does not "comport with traditional ideas of fair play and decency."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).

In the present case, the HRC conducted an investigation of Plaintiff and BPMS pursuant to its authority under the Richmond City Ordinance.  Furthermore, the HRC provided a name-clearing hearing, in which Plaintiff was given an opportunity to testify, present witnesses, and cross-examine adverse witnesses.  Therefore, although the investigation resulted in the loss of business for Plaintiff, the governmental action of the City Defendants does not "shock the conscience," and Plaintiff was not deprived of substantive due process.  Accordingly, the court **GRANTS** summary judgment on Count I of the Complaint in favor of City Defendants.

### 2.      Equal Protection

In Count II, Plaintiff alleges violations of his equal protection rights pursuant to Section 1983.  The Equal Protection Clause of the Fourteenth Amendment provides that states shall not "deny to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend XIV, § 1.  When similarly situated individuals are treated differently, the Equal Protection Clause requires "at least a rational reason for the difference, to assure that all persons subject to legislation or regulation are being 'treated alike, under like circumstances and conditions.'" *Engquist v. Or. Dept. Of Agr.*, --- U.S. ---, 128 S.Ct. 2146, 2153, 170 L.Ed.2d 975 (2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff brings his equal protection claim under a "class of one" theory.  A "class of one" equal protection claim involves a "plaintiff [who] alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Olech*, 528 U.S. at 564 (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)).  To successfully show a "class of one" equal protection claim, Plaintiff must establish: "(1) that [he was] intentionally treated differently from others similarly situated, and (2) that there was no rational basis for that differential treatment, or that the differential treatment was the result of an illegitimate animus toward the plaintiff by the defendants."  *Schor v. City of Chicago*, 576 F.3d 775, 779 (2009).

Plaintiff does not satisfy the first prong of the "class of one" analysis because he fails to identify any specific individual similarly situated to him and treated differently. Rather, Plaintiff makes a broad allegation that all other claims that came before the HRC were handled pursuant to the governing 180-day rule, whereas Plaintiff's claim was not. This is not enough to satisfy the first prong.  *Maulding Dev., LLC v. City of Springfield,*

*Ill.*, 453 F.3d 967, 971 (7th Cir. 2006) (holding that a plaintiff failed to show any similarly situated individuals when he only made sweeping arguments that he was treated differently, and did not present any evidentiary support).  Thus, since Plaintiff fails to prove an essential element of his case under equal protection, the court **GRANTS** summary judgment as to Count II of the Plaintiffs' Complaint.

### 3.   Monell Liability

Plaintiff brings a *Monell* claim against the City of Richmond and the HRC for violations of his due process and equal protection rights under Section 1983.  *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978).  Pursuant to *Monell*, municipalities cannot be held liable for the actions of its employees under Section 1983 on a *respondeat superior* theory.  *Id*. at 691.  Only when a municipality is enforcing an "official" policy or custom that causes the constitutional deprivation, can a municipality be liable under Section 1983.  *Id*. at 694-95.  In other words, "there can be no municipality liability based on an official policy under *Monell* if the policy did not result in violation of [a plaintiff's] constitutional rights."  *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2006).

Plaintiff's *Monell* claim fails because he was not deprived of a protected property or liberty interest, and therefore, there was no violation of a constitutional right.  Accordingly, the City of Richmond and the HRC cannot be held liable under Section 1983 for enforcement of an unconstitutional policy or custom, and the City Defendants' motion for summary judgement on this issue is **GRANTED**.

### 4.    Qualified Immunity

City Defendants argue that Chappell, in his capacity as director of the HRC, is entitled to qualified immunity for any alleged constitutional violations.  The qualified immunity analysis only comes into play if a plaintiff's constitutional rights were violated by one acting under the color of law.  *See, e.g., Aguilera v. Baca*, 510 F.3d 1161, 1167 (7th Cir. 2007).  As noted previously, Plaintiff did not suffer a constitutional violation, and thus, determination of whether Chappell is entitled to qualified immunity is moot.

### C.    State Law Claims

#### 1.    Supplemental Jurisdiction

In Counts III through V, Plaintiff brings state law claims for defamation, tortious interference with business relationships and contracts, and civil conspiracy.  Having dismissed Plaintiff's Section 1983 claims, the court must determine whether it will exercise supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff's state law claims fall within a district court's jurisdiction if they are "so related to the [federal] claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  In determining whether to exercise supplemental jurisdiction over remaining state law claims, a district court must "consider and weigh the factors of judicial economy, convenience, fairness and comity . . . ."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Having considered the relevant factors, the court elects to exercise supplemental jurisdiction and adjudicate the remaining state law claims on the merits pursuant to

Section 1367(a).  Plaintiff's remaining state law claims arise out of the same set of facts as his Section 1983 claims, and, therefore, the same controversy.  The interests of judicial economy and convenience are served through the court's retention of the remaining state law claims in light of the judicial investment already made by both parties in this action. *Moses v. Kenosha County*, 826 F.2d 708, 711 (1987).

### 2.     Immunity Under Indiana Tort Claims Act

Plaintiff's response brief does not address Chappell's Indiana Tort Claims Act ("ITCA") argument.  In fact, Plaintiff's brief is devoid of any argument concerning the state law claims.  The Seventh Circuit has "long refused to consider arguments that were not presented to the district court in response to summary judgment motions."  *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996) (quoting *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992)).  By not presenting any argument in his response, Plaintiff waived his opposition to Chappell's immunity claim.  Therefore, the court finds that Chappell is entitled to immunity under the ITCA from Plaintiff's state law claims. Accordingly, the City Defendants' Motion for Summary Judgment is **GRANTED** as to Counts III, IV, and V of Plaintiff's Complaint against Chappell.

## VI.     Conclusion

For the reasons set forth above, City Defendants' Motion for Summary Judgment (Docket # 45) is **GRANTED**.  Additionally, Plaintiff's Request for Oral Argument (Docket # 63) is **DENIED** and Defendants' Motion to Strike Plaintiffs' Surreply (Docket

# 78) is **GRANTED**.  The court notes for the record that Haun and Johnson remain as

defendants.


**SO ORDERED** this 16th day of March 2010.

_____

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

Richard B. Reiling
RICHARD B. REILING, ESQ.
reilinglaw@aol.com


James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Copy To:

REX JOHNSON
334 Southwest 3rd Street
Richmond, IN 47374